1

2

3

4

5

6

7

8                          **IN THE UNITED STATES DISTRICT COURT**

9                        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    RONNIE WINN,                              No.  2:22-CV-0706-DMC-P

12                 Plaintiff,

13        v.                                    ORDER

14    M. ZUNIGA,                                and

15                 Defendant.                   FINDINGS AND RECOMMENDATIONS

16

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court is Defendant's unopposed motion for summary

19    judgment based on Plaintiff's failure to exhaust administrative remedies prior to filing suit.  See

20    ECF No. 44.

21            The Federal Rules of Civil Procedure provide for summary judgment or summary

22    adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

23    together with affidavits, if any, show that there is no genuine issue as to any material fact and that

24    the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

25    standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

26    56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

27    the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

28    Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

1  moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The

opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts . . . . Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the

claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the Court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson,

477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

Court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

2

1  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

2  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

3  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

4  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

5  judge, not whether there is literally no evidence, but whether there is any upon which a jury could

6  properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

7  imposed." Anderson, 477 U.S. at 251.

8

9  ## I. PLAINTIFF'S ALLEGATIONS

10  This action proceeds on Plaintiff's original complaint.  See ECF No. 1.  Plaintiff

11  claims Defendant Zuniga violated his rights under the Eighth Amendment to be free from

12  excessive force.  See id. at 3.  Plaintiff alleges that he had permission from Sergeant Valadez to

13  stay in the shade because Plaintiff's "heat meds" were causing him dizziness, a known side effect

14  in temperatures over ninety degrees.  See id.  Valadez then instructed Plaintiff to call if Plaintiff

15  was ordered to leave the shade.  See id. at 4.  However, Defendant Zuniga ordered Plaintiff and

16  other inmates taking "heat meds" to leave the shade in contradiction to Valadez's orders.  See id.

17  at 4-5.  Plaintiff informed Defendant that Valadez gave Plaintiff permission to remain, and

18  Defendant replied, "I don't give a fuck what Sgt. Valadez said; stand up and put your hands

19  behind your back!" Id. at 1, 5.  Plaintiff complied, but Defendant placed handcuffs on Plaintiff

20  "extremely tight." Id.  Defendant then "slammed Plaintiff's head into the wall, while squeezing

21  the handcuffs even tighter, stating, 'You move again, and I will burst your fucking face and head

22  all over this entire wall!'" Id. at 6.  Plaintiff told Defendant he would "write him up" for assault,

23  and Defendant grabbed him by the handcuffs, causing pain, and threatened to put Plaintiff in "the

24  hole." See id. at 6-7.

25  Plaintiff then alleges that Defendant made a false Rules Violation Report on June

26  18, 2019, claiming that Plaintiff resisted orders and attempted to strike Defendant.  Id. at 7.

27  Plaintiff denied any resistance against Defendant at the administrative hearing, and inmate

28  witnesses also gave statements supporting Plaintiff's lack of resistance.  Id. at 8.

Plaintiff also claims Defendant retaliated against him in violation of the First Amendment because Plaintiff complained of tight handcuffs and threatened to file an inmate grievance against Defendant (described in Claim I.)  Id. at 9.  Plaintiff alleges Defendant's response "would have chilled or silenced a person of ordinary firmness from pursuing or continuing to exercise his First Amendment rights."  Id.  According to Plaintiff, he was placed into administrative segregation because of his protected activity.  Id. at 10.

## II.  DEFENDANT'S EVIDENCE

Defendant's unopposed motion for summary judgment is supported by Defendant's statement of undisputed facts (DUF), see ECF No. 44-1, the declaration of defense counsel Alexandria Faura, Esq., with attached exhibits, see ECF No. 44-2, and the declaration of Howard E. Moseley, the Associate Director of the Office of Appeals with the California Department of Corrections and Rehabilitation, with attached exhibits, see ECF No. 44-3.

According to Defendant, the following facts relating to the exhaustion of administrative remedies are not in dispute:

> 1.     At all relevant times, Plaintiff was an inmate with the California Department of Corrections and Rehabilitation (CDCR) housed at California State Prison – Solano (CSP-Solano).  See ECF No. 1.

> 2.     At all relevant times, Defendant was a correctional officer at CSP-Solano.  See ECF No. 19 (answer).

> * * *

> 4.     Prior to June 1, 2020, inmates were required to comply with the procedures set forth in Title 15 of the California Code of Regulations, §§ 3084-3085.  See Moseley Decl., ¶ 6.

> * * *

> 11.     A search was conducted of the Office of Appeals (OOA) computer system for all inmate appeals received by the OOA from Plaintiff between June 18, 2019 (the date of the alleged incident), and April 25, 2022 (the date Plaintiff filed this lawsuit), and the OOA did not receive any appeal filed by Plaintiff containing the allegations set forth in Plaintiff's complaint.  See Moseley Decl., ¶ 8.

> * * *

/ / /

4

14.    According to Plaintiff, he exhausted his administrative remedies by way of grievance log no. SOL-19-02331.  See Faura Decl., Ex. A (Plaintiff's answers to interrogatories identifying log no. 1913100).

15.    Plaintiff submitted grievance log no. SOL-19-02331 on July 31, 2019.  See Moseley Decl., Ex. 3 (third-level appeal decision assigned log no. 1913110 addressing grievance log no. SOL-19-02331 with the grievance attached).

* * *

17.    Appeal log no. 1913100 is Plaintiff's appeal from the denial of his grievance at log no. SOL-19-02331 and does not include use-of-force allegations against Defendant Zuniga.  See Moseley Decl., ¶ 8(a), Ex. 3.

ECF No. 44-1.

## III.  DISCUSSION

In his motion for summary judgment, Defendant argues that he is entitled to judgment in his favor as a matter of law because the undisputed facts show that Plaintiff failed to exhaust administrative remedies prior to filing suit.  See ECF No. 44.  For the reasons discussed below, the Court agrees.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not

1   all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first

2   instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the

3   burden of showing that the grievance process was not available, for example because it was

4   thwarted, prolonged, or inadequate.  See id.

5           The Supreme Court held in Woodford v. Ngo that, in order to exhaust

6   administrative remedies, the prisoner must comply with all of the prison system's procedural

7   rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus,

8   exhaustion requires compliance with "deadlines and other critical procedural rules."  Id. at 90.

9   Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance

10  which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

11  at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

12  quantity of prisoner suits "because some prisoners are successful in the administrative process,

13  and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

14  When reviewing exhaustion under California prison regulations which have since been amended,

15  the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on

16  adequate notice of the problem for which the prisoner seeks redress. . . ."  Griffin v. Arpaio, 557

17  F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010)

18  (reviewing exhaustion under prior California regulations).

19          Exhaustion is defined by the prison, not the PLRA. See Reyes v. Smith, 810 F.3d

20  654, 657 (9th Cir. 2016) (quoting Jones v. Bock, 549 U.S. 199, 218 (2007)). Until June 1, 2020,

21  when regulations relating to inmate grievances were amended, a prison inmate in California

22  satisfied the administrative exhaustion requirement by following the procedures set forth in

23  §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations.  Inmates "may appeal any

24  policy, decision, action, condition, or omission by the department or its staff that the inmate . . .

25  can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."

26  Cal. Code Regs. tit. 15, § 3084.1(a); see also Munoz v. Cal. Dep't of Corrs., 2020 WL 5199517,

27  at *6 (C.D. Cal. July 24, 2020).  Under the pre-2020 regulations, the inmate must submit their

28  appeal on the proper form and is required to identify the staff member(s) involved as well as

6

1    describing their involvement in the issue.  See Cal. Code Regs. tit. 15, § 3084.2(a).  These

2    regulations require the prisoner to proceed through three levels of appeal.  See Cal. Code Regs.

3    tit. 15, §§ 3084.1(b), 3084.2, 3084.7.  A decision at the third formal level, which is also referred

4    to as the director's level, is not appealable and concludes a prisoner's departmental administrative

5    remedy.  See id.  Departmental appeals coordinators may reject a prisoner's administrative appeal

6    for a number of reasons, including untimeliness, filing excessive appeals, use of improper

7    language, failure to attach supporting documents, and failure to follow proper procedures.  See

8    Cal. Code Regs. tit. 15, §§ 3084.6(b).  If an appeal is rejected, the inmate is to be provided clear

9    instructions how to cure the defects therein.  See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a).

10   Group appeals are permitted on the proper form with each inmate clearly identified and signed by

11   each member of the group.  See Cal. Code Regs. tit 15, § 3084.2(h).

12            According to Defendant:

13            Here, Plaintiff's federal complaint alleges that Officer Zuniga used
         excessive force on Plaintiff and that he was placed in administrative
14       segregation in retaliation for complaining of tight handcuffing and
         threatening to file a grievance against Officer Zuniga. (ECF No. 1.) In
15       contrast, Plaintiff's July 31, 2019, grievance only related to the
         disciplinary hearing related to the Rules Violation Report he received.
16       (DUF 16; Moseley Decl. Ex. 3.) Although Plaintiff claims this grievance
         is evidence of exhaustion, it fails to include the necessary information to
17       place the institution on notice of Officer Zuniga's conduct alleged in
         Plaintiff's underlying federal claim. The grievance only asserted claims of
18       due process violations and was only focused on the Senior Hearing Officer
         [SHO] and investigative employee assigned. Id. In fact, Plaintiff's
19       grievance does not even name Officer Zuniga. Id. Additionally, the
         requested relief in the grievance was for Plaintiff to be "found not guilty"
20       because the disciplinary hearing was not "fair and . . . impartial" since his
         request for witness was denied and the "SHO was egregiously bias and his
21       decision went much less than a preponderance of evidence standard,"
         which is unrelated to Plaintiff's claims against Officer Zuniga. Id. Indeed,
22       it is clear from the third-level decision that the Appeals Examiner only
         considered whether the SHO's decision was based on the correct standard
23       of proof, if Plaintiff was afforded the required due process protections, and
         whether relevant time constraints were followed; not whether Officer
24       Zuniga used excessive force or retaliated against Plaintiff. Id. Therefore,
         Plaintiff's grievance did not provide enough information to allow prison
25       officials to take responsive measures.

26            ECF No. 44, pg. 7.

27   / / /

28   / / /

                                    7

1            Defendant's position is supported by the evidence.  In his answers to

2    interrogatories, Plaintiff stated that grievance log no. SOL-19-02331 exhausted his administrative

3    remedies in this case.  See ECF No. 44-2, pgs. 4-7 (referencing log no. 1913110).  Log no.

4    1913110 is the third-level appeal decision concerning Plaintiff's appeal relating to his grievance

5    at log no. SOL-19-02331.  See ECF No. 44-2, pgs. 13-18.  Plaintiff's initial grievance log no.

6    SOL-19-02331 is attached to the third-level response at log no. 1913110.  These documents are

7    provided as Exhibit 3 to the Moseley declaration filed in support of Defendant's motion.  In his

8    appeal at log no. 1913100, Plaintiff claimed that the senior hearing officer presiding over a rules

9    violation report issued against Plaintiff violated his due process rights in the context of a

10   disciplinary hearing.  See id. at 13.  Similarly, Plaintiff's underlying grievance log no. SOL-19-

11   02331, alleged that Plaintiff was improperly found guilty of a rules violation occurring on June

12   18, 2019, because the hearing officer violated his due process rights.  See id. at 15.  Neither

13   Plaintiff's appeal at log no. 1913100 nor his underlying grievance at log no. SOL-19-02331

14   alleged excessive force by Defendant Zuniga.

15           Given that Plaintiff failed to file an opposition to Defendant's motion, the evidence

16   presented by Defendant is necessarily undisputed and the Court finds that Defendant has met his

17   burden on summary judgment of establishing Plaintiff's failure to exhaust administrative

18   remedies prior to filing suit.  As such, summary judgment in Defendant's favor is appropriate.

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

8

1

## IV.  CONCLUSION

2          Based on the foregoing, the undersigned orders and recommends as follows:

3          1.      It is ORDERED that the Clerk of the Court is directed to randomly assign a

4  District Judge to this case.

5          2.      It is RECOMMENDED that Defendant's unopposed motion for summary

6  judgment, ECF No. 44, be granted.

7          These findings and recommendations are submitted to the United States District

8  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

9  after being served with these findings and recommendations, any party may file written objections

10  with the Court.  Responses to objections shall be filed within 14 days after service of objections.

11  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

12  Ylst, 951 F.2d 1153 (9th Cir. 1991).

13

14  Dated:  September 10, 2025

15                                                  _____
                                                    DENNIS M. COTA
16                                                  UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28